■ In the Matter of the Estate of ALBERT E. FARONE, Deceased. JOSEPH F. KEHOE et al., Respondents; ALBERT E. AND ANGELA T. FARONE FOUNDATION, INC., Appellant, et al., Respondents. — Appeal from a decree of the Surrogate's Court of Otsego County (Kepner, Jr., S.), entered March 16, 1983, which, *inter alia,* judicially settled the accounts of Joseph F. Kehoe, David S. Merzig and Wilber National Bank, as executors of the estate of Angela T. Farone, deceased fiduciary of the estate of Albert E. Farone. ¶ Albert E. Farone died a resident of the City of Oneonta, Otsego County, on December 20, 1980, leaving a last will and testament dated November 28, 1979 which was duly admitted to probate on December 24, 1980. By the terms thereof, he designated his widow, Angela T. Farone, as executrix and cotrustee. She died on December 13, 1981,

prior to the completion of the administration of her husband's estate. On this appeal, the significant issues concern provisions of the decree of the Surrogate following petition for an intermediate accounting by the executors of the estate of Angela T. Farone of her proceedings as deceased fiduciary of the estate of her late husband. This being the case, an examination of some of the provisions of the last will and testament of Albert E. Farone is required. ¶ Paragraph designated "SIXTH" of said will provided, in pertinent part: "All of my clothing, other jewelry, personal effects, automobiles and all other tangible personal property not otherwise specifically bequeathed (together with cash on hand) owned by me at the time of my death, I give and bequeath to my said wife, ANGELA T. FARONE". ¶ The decree of the Surrogate provided that the phrase "(together with cash on hand)" effectively passed the proceeds of a checking account in the Wilber National Bank in the name of Albert E. Farone to his widow. We arrive at a contrary conclusion. The paragraph in question disposed of household and personal effects. The inclusion of "cash on hand" merely indicates a subcategory of money among household and personal effects, not meant to include the proceeds of a bank account. Not to be overlooked is the fact that decedent, an attorney, drew his own will, thus requiring us to give the technical meaning to the words used unless a contrary intent is clear from a reading of the entire document (*Matter of Sperling,* 92 Misc 2d 446, 449; see *Matter of Schieder,* 107 Misc 2d 1029, 1030). Moreover, his widow obtained the proceeds of other bank accounts held in joint name with decedent and was amply provided for under other provisions in the will (*Matter of Feist,* 170 Misc 497; *Matter of McKendrie,* 150 Misc 665; 7A Warren's Heaton, Surrogate's Courts [6th ed], § 68, par 4, subd [d]). ¶ Second, decedent Albert E. Farone bequeathed certain quantities of capital stock in various banks to various individuals and organizations. The Surrogate found these bequests to be general in nature, thus subject to be included in the computation of commissions payable to the fiduciary. We find this determination to be correct. ¶ The general rule in this State is to hold stock bequests to be general rather than specific, unless some expression of the testator, either in the will or in relevant circumstances at the time of its execution, indicates otherwise (see *Matter of Security Trust Co.,* 221 NY 213; *Tifft v Porter,* 8 NY 516; *Matter of Strasenburgh,* 136 Misc 91, affd 228 App Div 880, affd 255 NY 549). Factors which have caused a bequest to be considered specific include the use of such words as "my" preceding the designation of the stock bequeathed (see, e.g., *Matter of Sheldon,* 42 Misc 2d 1091), that the stock was not purchased readily on the open market (see, e.g., *Matter of Security Trust Co., supra,* p 217), or that the stock was issued by testator's closely held corporation (see, e.g., *id.; Matter of Tracy,* 33 Misc 2d 719). None of these factors are present in the matter at hand and objectant's contention that paragraph "TWENTY-NINTH" supports its position, since it mentions specific securities specifically owned in recommending they be retained by the testator's fiduciaries, is not to the contrary. Actually, it more strongly supports treating the bequests as general rather than specific since the paragraph gives the fiduciary the power to deal with the stocks which are in issue (*Matter of Strasenburgh, supra,* p 93). ¶ Finally, we find no merit to petitioners' contentions that the Albert E. and Angela T. Farone Foundation, Inc., has no standing to appeal and its objections should not be heard. The foundation was a party to the proceedings before the Surrogate and, as a remainderman of a residual trust, it possesses a direct interest in any determination that affects the size of the share obtained by representatives of decedent's widow's estate. As such, it is a party "aggrieved" (SCPA 2701; CPLR 5511; *Matter of Richmond County Soc. for Prevention of Cruelty to Children,* 11 AD2d 236, 239, affd 9 NY2d 913, app dsmd 368 US 290; see, also, *Matter of Lawson,* 75 AD2d 20, 30; cf. SCPA 103, subd 36). Moreover, the decree of the

Surrogate is, in any event, binding upon the foundation. As such, the foundation meets the test of an aggrieved party and, therefore, has standing to appeal (SCPA 1420, subd 4; cf. 7 Weinstein-Korn-Miller, NY Civ Prac, par 5511.01 *et seq.*). As to the foundation's failure to file specific objections or join in the particular objections filed, it would be a matter of form over substance under the circumstances of this case to require formal objections as a prerequisite to standing before this court (see *Matter of Gil*, 67 AD2d 779; see, also, 7 Weinstein-Korn-Miller, NY Civ Prac, par 5511.04). The matters in question were raised by other parties and concurred in by the foundation; thus, whether objections were properly interposed is more relevant to the issue of reviewability than standing. The appeal should not be prevented when there is a statute binding all parties to the particular construction of a will (SCPA 1420, subd 4). ¶ Decree modified, on the law, by reversing so much thereof as determined that account No. 1-0-01858-1 in the Wilber National Bank passed under paragraph "SIXTH" of the will of Albert E. Farone as "cash on hand", matter remitted to Surrogate's Court of Otsego County for further proceedings not inconsistent herewith, and, as so modified, affirmed, with costs to all parties filing briefs payable out of the estate of Albert E. Farone. Kane, J. P., Main and Yesawich, Jr., JJ., concur.

Mikoll and Harvey, JJ., concur in part and dissent in part in the following memorandum by Harvey, J. Harvey, J. (concurring in part and dissenting in part). We concur with the majority in all respects except their conclusion that the Surrogate erroneously interpreted paragraph "SIXTH" of the will to include testator's private checking account within his bequest of "cash on hand". As to the conclusion, we respectfully dissent. We believe that the Surrogate did, in fact, assign the technical meaning to the words as that meaning has developed by usage. If one were to reflect, it would be apparent that the most frequent use of the words "cash on hand" is by accountants in the preparation of financial statements of businesses. Obviously they are not describing actual currency. They refer to bank accounts readily available without restriction. ¶ The testator was not only a lawyer, but also a very active businessman who participated in a number of business ventures and owned a vast amount of securities. To us, the logical assumption is that his greatest familiarity with the phrase "cash on hand" resulted from his business experience. He, personally, drafted the will. There was nothing in the record to indicate that he was in the habit of carrying any significant amount of currency or keeping it in his home. Nor is there anything in the record to indicate that he intended the words to mean something other than the usual. ¶ There are few New York decisions bearing upon this issue and none that would mandate a determination contrary to that of the Surrogate. However, there are numerous decisions in other jurisdictions consistent with his opinion (see What Passes Under Terms "Cash," "Cash On Hand," or "Cash Assets" in Will, Ann., 27 ALR3d 1406). We would affirm the decree without modification.